UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KARLA HUAMAN,
On behalf of her minor Son, "JM",
Plaintiff,

V.                                          No. 3:13CV484 (DJS)

MARK SIROIS, ET AL.,
Defendants

RULING AND ORDER

The plaintiff, Karla Huaman ("Huaman"), initiated this action on behalf of her minor son

JM against the Town of East Hartford and four members of the East Hartford Police Department

("EHPD") in the aftermath of an encounter between members of the EHPD and JM. The

Complaint alleges, among other things, that one of the defendants, EHPD Officer Woodrow

Tinsley, III ("Tinsley"), assaulted and injured JM while forcibly attempting to bring JM to a

scheduled psychological evaluation and then falsely arrested JM on a charge of assaulting a

police officer. Currently pending before the Court is Tinsley's Motion for Leave to Withdraw

His Invocation of the Fifth Amendment and for Protective Order. Tinsley had invoked his Fifth

Amendment privilege at his March 31, 2014 deposition in this case. For the reasons stated below,

Tinsley's motion (doc. #93) is granted in part and denied in part.

BACKGROUND

The plaintiff Huaman's minor son JM was scheduled to have a psychological evaluation

at the Superior Court in Hartford on November 15, 2012. On November 14, 2012, Huaman

contacted the social worker from the Connecticut Department of Children and Families ("DCF")

assigned to work with Huaman's family and asked the social worker to come to Huaman's

apartment the following morning to assist in getting JM to the evaluation. The social worker

went to Huaman's apartment on the morning of November 15, 2012, and was informed by JM that he was too tired to go to the evaluation and that he believed the evaluation would take too long. The social worker consulted with her supervisor and then contacted the EHPD to request assistance in getting JM to the evaluation.

In response to the social worker's call, the defendant Tinsley was dispatched to Huaman's apartment. Upon Tinsley's arrival the social worker informed him that JM was supposed to go that morning for an evaluation that had been scheduled by the court. Tinsley informed JM that he needed to go to the appointment and that Tinsley would give him two seconds to get dressed or he would have to go as he was. At that time JM was lying on a couch wearing only a pair of boxer shorts. When JM did not move in response to Tinsley's statements, Tinsley took hold of JM's arm, pulled him off the couch and attempted to remove JM from the apartment. According to the plaintiff, during this process Tinsley put JM in a headlock, repeatedly punched JM, and pushed JM's face into the exit door of the apartment. Tinsley denies putting JM in a headlock, punching JM, or pushing JM's face into the door. Tinsley subsequently handcuffed JM and, after having told the defendant EHPD Sergeant Syme that JM had kicked Tinsley in the groin,  placed JM under arrest for interfering with and assaulting a police officer.

DISCUSSION

A. Withdrawal of the Invocation of the Fifth Amendment Privilege

It is well established that a civil litigant may invoke the Fifth Amendment privilege against self-incrimination and that the privilege extends to the discovery process. *See United States v. 4003-4005 5th Ave.,* 55 F.3d 78, 82 (2d Cir. 1995). Consideration of a motion seeking leave to withdraw the invocation of a Fifth Amendment privilege calls for an exercise of

discretion by the reviewing court. The Second Circuit has articulated certain considerations that

guide this exercise of discretion. The overarching principle the Court bears in mind in

considering the motion before it is the following:

> [B]ecause *all* parties-- those who invoke the Fifth Amendment and those
> who oppose them - - should be afforded every reasonable opportunity to
> litigate a civil case fully and because exercise of Fifth Amendment rights
> should not be made unnecessarily costly, courts, upon an appropriate motion,
> should seek out those ways that further the goal of permitting as much
> testimony as possible to be presented in the civil litigation, despite the
> assertion of the privilege. Thus, if there is a timely request made to the
> court, the court should explore all possible measures in order to select that
> means which strikes a fair balance . . . and . . . accommodates both parties.

*Id* at 83-84 (internal quotation marks and citations omitted).

Granting the defendant Tinsley's motion for leave to withdraw his invocation of the

privilege and permitting him to be deposed and testify at trial would certainly "further the goal of

permitting as much testimony as possible to be presented in the civil litigation." *Id.* at 84. In

seeking to further this goal, however, the Court must also bear in mind the responsibility to

"select that means which strikes a fair balance . . . and . . . accommodates both parties." *Id.*

(internal quotation marks omitted). In order to strike a fair balance between the parties, the Court

must address two important issues: (1) whether the privilege was invoked "primarily to abuse,

manipulate or gain an unfair strategic advantage over opposing parties," and (2) whether an

opposing party would "suffer[] undue prejudice" from a withdrawal of the privilege. *Id.* These

determinations are fact specific and must be made on a case by case basis. *See 4003-4005 5th

Ave.,* 55 F.3d at 85 ("exactly how a trial court should respond to a request to withdraw the

privilege . . . necessarily depends on the precise facts and circumstances of each case").

-3-

1.   Legitimacy of Privilege Invocation

Tinsley contends that he "invoked his Fifth Amendment privilege at his deposition due to a genuine and reasonable fear of criminal prosecution, stemming from the incident underlying this action." (Doc. #93-1, at 2). He states further that at the time he filed his motion for leave to withdraw the privilege, he "had made the determination that the likelihood of his being prosecuted on felony charges in either the state or federal jurisdiction was no longer realistic." (Doc. #99, at 8). Huaman, on the other hand, argues that Tinsley's invocation of his Fifth Amendment privilege was part of "a scheme to deny plaintiff timely discovery and to circumvent the interests of justice." (Doc. #96, at 2).

It is apparent that the incident giving rise to this lawsuit was a matter of some notoriety, having been reported in a November 26, 2012 press article with the headline "East Hartford Officer Accused of Punching 12-Year Old." (Doc. #93-5, at 2). In a November 20, 2012 letter to a member of the Connecticut State's Attorney's Office, counsel for Huaman stated, "On behalf of my clients [identified as Huaman and JM] I request that a criminal investigation be conducted by an outside agency regarding the actions of Officer Tinsley and Sullivan[1] and any others involved in the assault . . . . This incident is a serious violation of both Connecticut and Federal law and a complaint will be filed with the United States Department of Justice." (Doc. #93-3, at 4).

In a January 20, 2014 email message to plaintiff's counsel, counsel for the defendant Tinsley indicated that "we need to defer Tinsley's depo into February so I can try to get some sort of definitive word on whether he is, as you have stated, facing either federal or state criminal

---

[1]EHPD Officer Kenneth Sullivan is also a defendant in this action.

prosecution."(Doc. #93-4, at 3). In a responsive email sent that same day, plaintiff's counsel stated the following:

> First, let me be clear, I have never stated that Tinsley is facing criminal charges. I certainly think he should, but it is not my decision. I have been told repeatedly by both State and Federal law enforcement that he has not been cleared and that, at least according to the USDOJ, their investigation continues . . . . In any event, I intend to depose your client on January 28th[2] and if he needs to invoke his Constitutional Rights under the 5th Amendment so be it.

*(Id.* at 2).

Given these circumstances the Court cannot find that Tinsley "invoked the privilege primarily to abuse, manipulate or gain an unfair advantage over opposing parties." *4003-4005 5th Ave.,* 55 F.3d at 84. With the information known to Tinsley and his counsel at the time of his deposition, including a statement made by plaintiff's counsel on January 20,2014, that "according to the USDOJ, their investigation continues," his invocation of the Fifth Amendment privilege appears to have been based upon a legitimate and reasonable concern about potential prosecution for his actions in the incident that is the subject of this lawsuit.

2.  Prejudice to Plaintiff

Huaman argues that she "will be unfairly prejudiced by a 'withdrawal' in that although no trial date has been set, the discovery period ended over six (6) months ago, and summary judgment has been briefed and []is pending decision by the court." (Doc. #96, at 2). She goes on to contend that permitting Tinsley to withdraw his privilege would result in enormous cost and delay to her because she would be required to pursue additional discovery and request permission to submit an amended response to the pending summary judgment motion. (*Id.*). For

------

[2]Tinsley's deposition took place on March 31, 2014.

his part, Tinsley argues that "any prejudice to plaintiff [resulting from the withdrawal of his invocation of the Fifth Amendment privilege] is minimal, as demonstrated by the significant discovery conducted . . . [and] can be fully cured by reopening discovery and allowing plaintiff to depose Officer Tinsley." (Doc. #93-1, at 19).

Huaman points out that Tinsley did not file the motion to withdraw his invocation of the privilege until more than five months after the close of the discovery period.[3] While that statement is correct, it is also true that Huaman's counsel indicated to Tinsley's counsel on January 20, 2014 that "according to the USDOJ, their investigation continues." (Doc. #93-4, at 2). Nearly ten months later, when Tinsley filed his motion to withdraw invocation of the privilege, "Officer Tinsley had made the determination that the likelihood of his being prosecuted on felony charges[4] in either the state or federal jurisdiction was no longer realistic." (Doc. #99, at 8). The Court recognizes that any number of factors have to be considered and evaluated by both counsel and client in connection with the assertion of a Fifth Amendment privilege. Based on the facts before it, the Court will not second-guess the timing of the determination by Tinsley and his counsel that the likelihood of prosecution was no longer realistic.

There will almost certainly be some degree of prejudice to a plaintiff in any case where a defendant who had previously invoked his Fifth Amendment privilege is permitted to withdraw that invocation at a later point in the litigation. The question is whether the plaintiff would "suffer[] *undue* prejudice" from a withdrawal of the privilege. *4003-4005 5th Ave.,* 55 F.3d at 84

---

[3]The discovery period ended on May 21, 2014 (doc. #70) and the instant motion was filed on November 7, 2014. (Doc. #93).

[4]The statute of limitations for misdemeanors had expired in November 2013.

(emphasis added). In considering that question with regard to Tinsley's motion, the Court finds it significant that Huaman has already obtained through discovery Tinsley's sworn police report concerning the incident at issue in this case, as well as recordings and transcripts of two interviews given by Tinsley during the course of an internal affairs investigation of the incident[5]. *See Martinez v. City of Fresno,* 1:06-CV-00233 OWW GSA, 2010 U.S. Dist. LEXIS 19207, at *13 (E.D. Cal. March 3, 2010) ("Plaintiffs' prejudice arguments are resolved by the existence of [the defendant police officer's] prior testimony/statements concerning the . . . incident [that is at issue in the lawsuit].")*. Huaman also has the deposition testimony of the DCF worker who was a witness to the November 15,  2012 incident, as well as other EHPD reports concerning that incident.

　　　　Huaman contends that if the Court were to grant Tinsely's motion she would have to conduct a second deposition of Tinsley and also would:

> have to move to reopen discovery and potentially depose all the witnesses again, depose other witnesses discovered in this "do over" and then seek permission to submit an amended response to the pending motion for summary judgment as to all defendants. The cost and delay will be enormous for the plaintiff.

(Doc. #96, at 2). The Court agrees that Huaman would want to, and should be permitted to, conduct a second deposition of Tinsley if his motion to withdraw is granted. The Court finds, however, that the broad scope of additional discovery quoted above is speculative. This is particularly so in light of the discovery previously obtained by Huaman, including three

--------

[5]Tinsley's counsel represents that these statements were "given by him under possible penalty of termination for failure to answer questions honestly and accurately." (Doc. #99, at 6). Pursuant to *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), "statements obtained [from police officers] under threat of removal from office" cannot be "use[d] in subsequent criminal proceedings."

statements or reports from Tinsley regarding the November 15, 2012 incident. With regard to the pending motion for summary judgment, the Court notes that this motion, which was filed by the defendants, does not seek summary judgment as to the negligent infliction of emotional distress claim against the Town of East Hartford or the following claims against Tinsley: excessive force (brought pursuant to 42 U.S.C. §1983), assault and battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. In any event, if the plaintiff were to conduct a second deposition of Tinsley and then conclude that she needed to supplement her response to the motion for summary judgment, she would be permitted to do so. Having considered the various factors affecting this issue, the Court concludes that Huaman would not suffer undue prejudice if the Court were to grant Tinsley's motion to withdraw his invocation of the Fifth Amendment privilege.

## B. Protective Order

Rule 26 of the Federal Rules of Civil Procedure contains general provisions governing discovery in civil actions and provides in part that, "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . [and] requiring that a deposition be sealed and opened only on court order . . . ." Fed. R. Civ. P. 26 (c)(1). In conjunction with the withdrawal of his Fifth Amendment privilege, Tinsley seeks a protective order:

      (i)      barring the dissemination of his potential deposition and trial testimony and transcripts concerning certain specified matters to third parties;

      (ii)     barring plaintiff's counsel from commenting on such deposition and trial testimony concerning those particularly identified matters,

outside the context of a judicial proceeding in this action;

(iii)     precluding plaintiff's counsel from mentioning or commenting on
          during trial in the presence of the jury Officer Tinsley's invocation
          of the Fifth Amendment; and

(iv)      restricting the use of such testimony and transcripts by the parties
          to the prosecution or defense of this civil action and submission
          of such testimony under seal.

(Doc. #93, at 1-2). Tinsley argues that "there is 'good cause' for the issuance of a protective order,

as, absent the requested protection, Officer Tinsley will be precluded from testifying and any

adjudication of this matter will not be based on all the material facts." (Doc. #93-1, at 2).

Huaman counters with the argument that "Tinsley's motion for protective order is without merit,

intended to prevent plaintiff from using the fact that Tinesly invoked his Fifth Amendment right

and the adverse inference that the trier of fact could find." (Doc. #96, at 3).

1.  Tinsley's Invocation of His Fifth Amendment Privilege

Because Huaman's opposition to the motion for protective order focuses on Tinsley's

request that plaintiff's counsel not be permitted to mention or comment on Tinsley's invocation of

the Fifth Amendment privilege in the presence of the jury, the Court will address this aspect of

the motion first.

The Court previously noted in connection with its consideration of Tinsley's motion to

withdraw his invocation of the Fifth Amendment privilege that in seeking to "further the goal of

permitting as much testimony as possible to be presented in the civil litigation" it "should explore

all possible measures in order to select that means which strikes a fair balance . . . and . . .

accommodates both parties." *4003-4005 5th Ave.,* 55 F.3d at 84 (internal quotation marks

omitted). In essence the Court seeks to level the playing field for both sides to the greatest extent

possible. In an instance where a party stands on an invocation of the Fifth Amendment privilege

made during discovery, fairness dictates that the jury be informed of the invocation of the privilege and permitted to draw an adverse inference from this fact. *See Penfield v. Venuti*, 589 F. Supp. 250, 255 (D. Conn. 1984) ("Permitting an adverse inference to be drawn against a party who invokes the Fifth Amendment privilege during discovery prevents use of the privilege as a weapon in civil litigation.").

In this case, the Court has endeavored to "further the goal of permitting as much testimony as possible to be presented in the civil litigation" through its analysis of Tinsley's motion to withdraw his invocation of the privilege. The Court has concluded that goal can be furthered and the playing field leveled by permitting Tinsley to be deposed and later testify at trial and by permitting Huaman, if necessary, to supplement her response to the motion for summary judgment. The Court believes that if, beyond those additional measures, Huaman were permitted to mention in the presence of the jury Tinsley's invocation of his Fifth Amendment privilege during his deposition, the playing field would no longer be level but would tilt in favor of the plaintiff. For that reason, the Court will grant Tinsley's motion to the extent it seeks to "preclud[e] plaintiff's counsel from mentioning or commenting on during trial in the presence of the jury Officer Tinsley's invocation of the Fifth Amendment." (Doc. #93, at 2).

2.    Tinsley's Deposition and Trial Testimony

The balance of Tinsley's motion for protective order seeks restrictions placed on the use of his potential deposition and trial testimony "concerning certain specified matters[6]." (Doc. #93, at 1). Tinsley requests an order that would not permit the dissemination to third parties of

---

[6]Although Tinsley does not further identify these "specified matters," it is presumed that he is referring to matters which implicate his Fifth Amendment rights.

transcripts of his testimony about those specified matters, would not permit plaintiff's counsel from commenting on that testimony outside the context of a judicial proceeding in this action, would limit the use of such testimony and transcripts to the prosecution or defense of this action, and would require the submission of such testimony under seal. Although Tinsley's motion does not distinguish between discovery material and judicial documents, "the facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013). For that reason the Court will give separate consideration to each of these categories.

a . Discovery Material

"Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the . . . reach [of the presumption of public access] and stand[] on a different footing than . . . a motion filed by a party seeking action by the court . . . ." *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) (internal quotation marks and citations omitted). *See also Burgess v. Town of Wallingford*, 3:11-CV-1129 (CSH), 2012 U.S. Dist. LEXIS 135781, at *33 (D. Conn. Sept. 21, 2012) (internal quotation marks omitted) ("When the materials in question are deemed non-judicial, then there is no presumption of public access, and the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order.").

The "good cause" standard under Rule 26 "requires that the movant identify specific prejudice or oppression that will be caused by disclosure." *Id.* at *35. The "good cause" identified

by Tinsley in his motion is the lingering possibility that criminal charges could be brought against him concerning the incident that is at issue in this action. Although Huaman objects to any restriction being placed on discovery materials, the Court recognizes that "a litigant does not have an unrestrained right to disseminate information that has been obtained through pretrial discovery and has no First Amendment right of access to information made available only for purposes of trying his suit." *Id.* at *31 (internal quotation marks and citation omitted). While Tinsley acknowledges that it is not likely he will be prosecuted on felony charges relating to the incident in question, there is a five year  statute of limitations on felony charges that could theoretically be brought against him. The Court accepts this premise as a baseline showing of good cause for purposes of a motion for protective order under Fed. R. Civ. P. 26. Because there is no presumption of public access to discovery materials, the Court is willing to enter an order restricting the dissemination to third parties of the deposition transcript of Tinsley's testimony about matters that implicate his Fifth Amendment rights. The Court does not believe such an order would prejudice the plaintiff with regard to the prosecution of this action.

        b. Judicial Documents

        While there is no presumption of public access to discovery material, there is a "common law right of public access to judicial documents . . . ." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006). Judicial documents are those that are "relevant to the performance of the judicial function and useful in the judicial process. . . . " *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995). Additionally, "it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). The Second Circuit

-12-

has stated that "documents submitted to a court for its consideration in a summary judgment motion are - - as a matter of law - - judicial documents to which a strong presumption of access attaches, both under the common law and the First Amendment." *Id.* at 121. *See also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004 ) (internal quotation marks omitted) ("the presumptive right to public observation is at its apogee when asserted with respect to documents relating to matters that directly affect an adjudication").

Given the "strong presumption of access" that attaches to judicial proceedings and to documents submitted by either party as part of a summary judgment motion, Tinsley's motion for a protective order relating to judicial documents stands on very different footing from his request relating to discovery material. The strong presumption of public access arising out of the First Amendment "may be overcome only by specific findings that closure is essential to preserve higher value," and "the burden of demonstrating that a case, or document, should be sealed is upon the party seeking such action . . . ." *Lowery Bros. Infiniti, Inc., v. Infiniti Division, Nissan North America, Inc.*, 5:13-cv-1258, 2013 U.S. Dist. LEXIS 152592, at *4 (N.D.N.Y. Oct. 23, 2013).

Although the statute of limitations on felony charges has not yet expired, Tinsley has represented to the Court that he "made the determination that the likelihood of his being prosecuted on felony charges in either the state or federal jurisdiction was no longer realistic"; (doc. #99, at 8); and the Court relied upon that representation in considering Tinsley's motion to withdraw his invocation of the Fifth Amendment privilege. The Court also recognizes that there is a strong public interest in a case involving claims that a law enforcement official used excessive force against a minor. *See Prescient Acquisition Group, Inc. v. MJ Publishing Trust*,

487 F. Supp. 2d 374, 376  (S.D.N.Y. 2007) (in "balanc[ing] competing considerations against the presumption [of access]" the court noted that "[t]here is also a countervailing public interest in the subject matter of the case"). Under these circumstances the Court finds that Tinsley has not demonstrated a compelling reason that would overcome the presumption of access to material submitted in connection with a summary judgment motion or to any aspect of the trial in this case. *See Gambale*, 377 F.3d at 140 (internal quotation marks omitted) ("parties to litigation may . . . overcome the presumption of access by supplying . . . compelling reasons"). For that reason the Court is not willing to enter an order that places any restriction on access to judicial documents or to any aspect of the trial.

CONCLUSION

For the reasons stated above the defendant Tinsley's Motion for Leave to Withdraw His Invocation of the Fifth Amendment and for Protective Order (**doc. #93**) is **GRANTED IN PART** and **DENIED IN PART** as further specified below:

1. The Court grants Tinsley's motion to withdraw his invocation of the Fifth Amendment privilege. The plaintiff Huaman may conduct a second deposition of Tinsley and, if necessary, supplement her response to the pending motion for summary judgment.

2.  The Court grants Tinsley's motion for protective order restricting the dissemination to third parties of the deposition transcript of Tinsley's testimony about matters that implicate his Fifth Amendment rights. This restriction shall not apply to any portion of Tinsley's deposition testimony that is submitted in connection with a motion for summary judgment or is used at trial.

3.  The Court denies Tinsley's motion for protective order as it pertains to judicial proceedings or judicial documents, including any documents submitted in connection with a

-14-

motion for summary judgment.

In connection with his request for a protective order, Tinsley indicated that "absent the requested protection, Officer Tinsley will be precluded from testifying . . . ." (Doc. #93-1, at 2). In light of this statement and the Court's denial of portions of his motion for protective order, it is not clear whether Tinsley will want to proceed with the withdrawal of his invocation of the Fifth Amendment privilege. The Court therefore directs Tinsley to file, on or before April 30, 2015, a notice indicating whether he will be proceeding with the withdrawal of his invocation of the Fifth Amendment privilege or wishes to stand on that invocation. If Tinsley indicates he is withdrawing his invocation of the privilege despite the denial of portions of his motion for protective order, the Court will issue a scheduling order pertaining to a second deposition of Tinsley and a possible supplemental filing in opposition to the defendants' motion for summary judgment.

SO ORDERED this 20th      day of April,  2015.

_____/s/ DJS_____
          Dominic J. Squatrito
          United States District Judge