UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

KARLA HUAMAN,                                    :

On behalf of her minor Son, "JM",               :

     Plaintiff,                                :

                                                 :

v.                                               :        No. 13CV484 (DJS)

                                                 :

MARK SIROIS, ET AL.,                             :

     Defendants.                               :


MEMORANDUM OF DECISION

The Plaintiff, Karla Huaman ("Huaman"), brings this action on behalf of her minor son, J.M., against the Defendants, Officer Woodrow Tinsley, III ("Tinsley"), Sergeant Steven Syme ("Syme"), Officer Kenneth Sullivan ("Sullivan"), former East Hartford Chief of Police Mark Sirois ("Sirois"), and the Town of East Hartford ("the Town") (collectively, "the Defendants") for damages and equitable relief.  This action is brought pursuant to 42 U.S.C. § 1983 ("§1983"), the United States Constitution, the Connecticut constitution, and common law tenets concerning false arrest, emotional distress, malicious prosecution, and assault and battery.  Huaman sues the Defendants in their individual and official capacities.

Huaman alleges that all the Defendants deprived J.M. of his rights under the United States Constitution and the Connecticut constitution through the use of excessive force (Count One) and through false arrest (Count Two).  Huaman additionally alleges that the Town violated § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and the Connecticut constitution (Count Three). Specifically, Huaman bases her § 1983 claim against the

Town "on the Town's failure to conduct adequate investigations of excessive force complaints, and failure to discipline officers who may be found to use excessive force."  (Doc. # 77, at 11).

In addition to her federal claims pursuant to § 1983, Huaman asserts several common law claims under the laws of the State of Connecticut.  She alleges that the Defendants are liable at common law for false arrest (Count Four), negligent infliction of emotional distress (Count Five), intentional infliction of emotional distress (Count Six), and malicious prosecution (Count Seven)[1].  Huaman alleges that Tinsley, but no other Defendant, is liable at common law for assault and battery (Count Eight).  Huaman further alleges that the Town is liable for damages pursuant to Conn. Gen. Stat. § 52-557 (Count Nine) for all of the common law claims made against the individual Defendants as a result of each Defendant's employment with the Town.

The Defendants have filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  With regard to the Defendants Sullivan, Syme, and Sirois, the Defendants move for summary judgment on all claims.  As to the claims against Tinsley, the Defendants move for summary judgment on the § 1983 claim for false arrest (Count Two) and the common law claims for false arrest (Count Four) and malicious prosecution (Count Seven). The Defendants do not move for summary judgment on the claims against Tinsley for use of excessive force (Count One), negligent and intentional infliction of emotional distress (Counts Five and Six), and assault and battery (Count Eight).  The Defendants move for summary judgment on all claims made directly against the Town; the Defendants do not move for summary judgment on the negligent infliction of emotional distress claim against the Town to the extent that the claim is derived from the negligent infliction of emotional distress claim

---

[1] It is not clear whether Huaman is also raising a malicious prosecution claim pursuant to § 1983. This would not affect the Court's analysis, however, since a malicious prosecution claim brought pursuant to § 1983 "is governed by state law." *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995).

against Tinsley, pursuant to Conn. Gen. Stat. § 52-557n (Count Nine).  For the reasons that
hereafter follow, the Defendants' motion for partial summary judgment is GRANTED in part
and DENIED in part.

## I.  FACTS

Before reciting the facts which the Court finds to be undisputed, the Court wishes to
address an issue concerning the Plaintiff's filings in opposition to the Defendants' motion.  The
rules of the United States District Court for the District of Connecticut contain specific
requirements pertaining to papers filed in opposition to a motion for summary judgment.  Those
papers must include a "'Local Rule 56(a)2 Statement,' which states in separately numbered
paragraphs meeting the requirements of Local Rule 56(a)3 and corresponding to the paragraphs
contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted
by the moving party is admitted or denied.  The Local Rule 56(a)2 Statement must also include
in a separate section entitled 'Disputed Issues of Material Fact' a list of each issue of material
fact as to which it is contended there is a genuine issue to be tried."  L. Civ. R. 56(a)2.  The non-
moving party must separately:  (1) respond to all of the "undisputed" facts contained in the
moving party's Local Rule 56(a)1 Statement with either an admission or denial of that fact; and
(2) put forth all facts that remain in dispute that are material to the summary judgment motion.
In the Local Rule 56(a)2 Statement, each of the non-moving party's factual assertions or denials
"must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to
the facts at trial and/or (2) evidence that would be admissible at trial."  L. Civ. R. 56(a)3.  Failure
to provide this specific citation "may result in the Court deeming certain facts that are supported
by the evidence admitted . . . ." *Id.*

In connection with the consideration of a motion for summary judgment, a district court is not obligated to "perform an independent review of the record to find proof of a factual dispute.  A district court is obligated only to consider the materials [properly] cited to it by the parties." *Morales v. New York State Department of Labor*, 530 F. App'x 13, 14 (2d Cir. 2013) (internal quotation marks and citation omitted).  In this regard, the Court notes that Huaman's Local Rule 56(a)2 Statement does not in all instances properly cite to evidence in the record that supports Huaman's denials or assertions.  Some of the denials contained in Huaman's Local Rule 56(a)2 Statement lack any support in the portion of the record cited.  By way of example, the Defendants' Local Rule 56(a)1 Statement asserts that, "At no point did any officer present make any inappropriate comment regarding MMA or ethnicity."  (Doc. # 75, at 5, ¶ 26).  The asserted fact pertains to the occurrence of inappropriate comments.  The Defendants support that assertion with citations to the Garrity Interview[2] of Syme and the deposition of Lisa Freeman[3].  In denying this assertion, Huaman cites to pages 81-83 in the deposition transcript of Freeman and pages 64-65 in the deposition transcript of  J.M. (Doc. # 78, at 11, ¶ 26).  In her denial, Huaman maintains that "Freeman heard officers joking about mixed martial arts (MMA).  Three officers right by the police cruiser where JM was in the back seat were talking about MMA.  Freeman heard JM called a 'Punk.'  JM stated 'My father never punches me in the face' to the officers next to the car." (*Id.*). None of the deposition pages cited by Huaman contain any reference to comments about J.M.'s ethnicity.  The cited pages in J.M.'s deposition do not refer to the relevant period of time, and make no reference to MMA or a discussion between J.M. and any police officer. (Doc. # 78-3, at 25-26, pp. 64-65).  The cited portion of Freeman's testimony contains nothing more

---

[2] Pursuant to *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967), a statement obtained from a police officer "under threat of removal from office" during the course of an investigation cannot be "use[d] in subsequent criminal proceedings."

[3]  Lisa Freeman was a worker from the Department of Children and Families assigned to Huaman's family.

than Freeman answering that she heard "officers joking about mixed martial arts," as well as

stating, "I just recall them conversating. I don't remember if they were laughing or not. They

were conversating about martial arts and MMA." (Doc. # 78-1, at 33, p. 81:9-12 and at 35, p.

83:5-8). This record evidence does not reference the appropriateness of the officers' comments.

Huaman's citation does not provide any relevant information concerning inappropriate

comments about MMA because nothing in that portion of the record references the words, tone,

or nature of the officers' comments. The additional information contained in Huaman's

purported denial does not pertain to the specific undisputed fact put forth by the Defendants. To

the extent that the denials contained in Huaman's Local Rule 56(a)2 Statement lack a relevant,

supportive citation, the Court deems the corresponding undisputed facts in the Defendants'

Local Rule 56(a)1 Statement admitted.

A Local Rule 56(a)2 Statement must also contain the facts that the non-moving party

argues are in dispute, along with a citation to the specific portion of the record supporting those

assertions of disputed facts. Several of the disputed facts contained in Huaman's Local Rule

56(a)2 statement lack any basis in the cited portion of the record. For example, Huaman asserts

that "after SGT Syme, Tinsley and Sullivan conferred about the incident and were aware of the

complaints of excessive force from Huaman and Freeman, they decided to manufacture charges

against the child in order to cover up the misconduct." (Doc. # 77-1, at 22, ¶ 41). Huaman cites

to pages 59-61 in the deposition transcript of Syme as support for her assertion. (*Id.*). The cited

pages of Syme's deposition make no mention of a conference, nor of Officer Sullivan discussing

the incident with anyone. (Doc. # 78-6, at 19-21, pp. 59-61). The Court cannot construe this as

a disputed fact for summary judgment purposes when Huaman has only cited unrelated

testimony. As a further example, Huaman maintains that "Chief Sirois[] is primarily concerned

with the 'Costs/benefits' analysis of excessive force complaints."   (Doc. # 77-1, at 23, ¶ 49).

She cites one page in the deposition of Sirois in support of this asserted fact.  (*Id.*). The entire

relevant portion of the Sirois deposition is as follows:

> Q      Well, no, do you know how much money the town pays for excessive
> force complaints against officers?
>
> A      I care what the town pays to settle cases in regards to a cost benefit
> analysis and in regards to what they're willing to pay to not litigate a case.  We do
> risk management.  So, I do care about what we pay.  Most of those cases are,
> there's no finding of fault or guilt.  But it's just a cost benefit analysis that's
> handed down by the Town Council who is the budget authority.

Doc. # 78-9, at 9, p. 51:5-22).

Huaman's assertion that "Chief Sirois is primarily concerned with the 'Costs/benefits'

analysis of excessive force complaints" amounts to a mischaracterization of Sirois' testimony.

Sirois does not indicate his primary concern regarding excessive force complaints.  Sirois

indicated that he cared what the Town paid, not that Cost-Benefit analysis drove the handling of

excessive force complaints.  To the extent that the disputed facts contained in Huaman's Local

Rule 56(a)2 lack the requisite support in the cited portion of the record, the Court will not

consider those facts to be disputed.

At all times relevant to this case, the individual Defendants were members of the Town's

Police Department.  Tinsley held the rank of police officer, Sullivan held the rank of police

officer, Syme held the rank of Sergeant, and Sirois held the rank of Chief of Police.

On November 15, 2012, Huaman's minor child J.M. had a 9:00 a.m. appointment for a

psychological evaluation at the Superior Court in Hartford, Connecticut.  J.M., a Hispanic male,

was twelve years old at the time.  J.M. has, and had at the time of the incident, autism and

depression.  At approximately 8:10 a.m. on November 15, 2012, Lisa Freeman ("Freeman"), the

Department of Children and Families ("DCF") worker assigned to Huaman's family, arrived at

Huaman's apartment.  Huaman had called Freeman the day prior to tell her that J.M. did not

want to go to the psychological evaluation. When Freeman arrived at Huaman's apartment, she

found J.M. lying on a couch wearing only sport shorts.  Freeman and Huaman attempted to

convince J.M. to attend his evaluation, but  J.M. refused, saying that "he was tired [and] that the

appointment would take too long."  (Doc. # 78-1, at 5, p. 49:21-22).

Freeman called the East Hartford Police Department ("EHPD") for assistance. She

informed dispatch that she needed police assistance with a juvenile that was refusing to attend a

court-ordered psychological evaluation. Huaman did not disagree with Freeman calling the

EHPD for assistance, but did not agree to having J.M. be "intimidated by a police officer so that

he would agree to go to the evaluation."  (Doc. # 78-2, at 14, p. 61:1-8).

Tinsley was dispatched to Huaman's apartment. Sergeant Syme, aware that Tinsley was

responding to an assist call from DCF, had instructed Tinsley not to take any action unless there

was a court order signed by a judge. Upon Tinsley's arrival Freeman told him that J.M. was

scheduled for a court ordered evaluation and handed Tinsley a document. The document was

labeled "Notice of Evaluation." (Doc. # 74-4, at 2).  Although the document stated that a "Court

Ordered PSY COMBO . . . Evaluation Has Been Scheduled [for November 15, 2012]. . . ." it was

not signed by a judge. (*Id.*).  J.M. remained lying on the couch.  Tinsley told J.M, "You have two

seconds to get dressed, or you are going as is."  (Doc. # 78-1, at 14, p. 58:14-16).  J.M. replied

that two seconds was not enough time. [4]  Tinsley then pushed a coffee table aside, pulled J.M. off

---

[4] There is a genuine dispute as to many of the facts concerning what happened after this point. As to any material facts that are genuinely in dispute, this Court is "bound to consider the facts in the light most favorable to [Huaman], the non-moving party." *Simpson v. City of New York*, 793 F.3d 259, 262 (2d Cir. 2015).

the couch and placed him into a headlock. Tinsley punched J.M. in the face as he dragged J.M. to the door, and pushed J.M.'s face into the door before opening it. J.M. then placed his hands on the doorframe. In response to J.M. placing his hand on the doorframe, Tinsley forced J.M. to the ground, and then punched J.M. in the head three times. Tinsley then kneed J.M. in the neck before yanking J.M.'s hands back and handcuffing him. Tinsley left J.M. on the floor while he went to wash his hands, which were cut during the incident.

Huaman and Freeman then dressed J.M.  After he washed his hands Tinsley used the radio to request another officer at Huaman's apartment. Tinsley brought J.M. outdoors to his police car, which was stationed outside Huaman's apartment.  Tinsley placed J.M., still handcuffed, into the backseat of his police car. Huaman and Freeman also went outside.  Sullivan arrived at Huaman's apartment in response to Tinsley's request for another unit. Tinsley was already escorting J.M. to his police car when Sullivan arrived at the apartment.  As J.M. sat in the backseat of the police car, Sullivan spoke with him. One of the things Sullivan said to J.M. was, "You're a punk and you should be in school." (Doc. # 78-3, at 42, p. 87:8).

While Sullivan was speaking to J.M., Syme arrived on the scene and spoke with Tinsley about what had happened in Huaman's apartment. Syme then went over to Tinsley's police car, where Sullivan was still talking to J.M.  Syme asked J.M. if he was injured and J.M. replied that he was not.  Notwithstanding his comment, Huaman observed injuries to J.M.'s face after the incident inside her apartment. While J.M. was sitting in the backseat of Tinsley's vehicle, one of the police officers said something to the effect that Tinsley "was a Mixed Martial Arts guy and that he was a fighter." (Doc. # 78-3, at 43, p. 88:10-11).

Tinsley provided Huaman with a Summons that charged J.M. with Interfering with an Officer, in violation of Conn. Gen. Stat. § 53a-167a, and Assault of Public Safety Personnel, in violation of Conn. Gen. Stat. § 53a-167c.  Tinsley discussed the Summons with Syme before giving it to Huaman. Sullivan was not part of any conversation between Tinsley and Syme. Sirois was never at Huaman's apartment.  Tinsley drove J.M. to the psychological evaluation after issuing the Summons.

On November 15, 2013, the same day of the incident involving J.M. and Tinsley, Huaman, J.M., and J.M's father went to the EHPD station and filed a complaint concerning the incident.  The EHPD conducted an investigation into the complaint against Tinsley. After the investigation, the EHPD disciplined Tinsley for failing to follow the protocol on how to handle juveniles. Sirois, by virtue of his role at the time as Chief of Police, conducted the final review for discipline based on investigations into the conduct of EHPD officers.

## II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986).  "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute."  *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir. 1981) (internal quotation marks omitted).

A fact is material if it affects the outcome of the dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248. (1986) ("Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.").  A dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The Court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Id.*

### III. DISCUSSION

### A. FEDERAL LAW CLAIMS

Before analyzing Huaman's federal claims, the Court will address certain redundant or deficient claims contained within Huaman's action.  First, the applicable law for §1983 suits against municipalities differs in form and substance from the applicable law for §1983 suits against individuals.   The §1983 claims against the Town cannot be derived from the conduct of the police officers through the theory of vicarious liability, but must instead contain allegations that the Town had a custom or policy which caused the violation of the constitutional right:  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Department of  Social Services of the City of New York*, 436 U.S. 658, 694 (1978); *see also Los Angeles*

*County v. Humphries*, 562 U.S. 29, 35 (2010) ("a municipality [can] not be held liable under §

1983 solely because it employed a tortfeasor").

The § 1983 claims for excessive force (Count One) and false arrest (Count Two)

contained in Huaman's complaint lack any allegation that the Town had a custom or policy

which caused the violation of the constitutional right.[5]  As these claims against the Town fail to

contain the required elements for municipal liability under § 1983, the Court grants the

Defendants' motion for partial summary judgment on Huaman's § 1983 claims for excessive

force and false arrest against the Town (Counts One and Two).

Second, Huaman's attempts to sue the individual Defendants in their official capacities

merely restate the claims against the Town.  "[A] judgment against a public servant 'in his

official capacity' imposes liability on the entity that he represents provided, of course, the public

entity received notice and an opportunity to respond."  *Brandon v. Holt*, 469 U.S. 464, 471-72

(1985).  *See also Monell*, 436 U.S. at 690, n. 55 ("official-capacity suits generally represent only

another way of pleading an action against an entity of which an officer is an agent").  To the

extent that Huaman claims money damages against Tinsley, Sullivan, Syme, and Sirois in their

official capacities, she claims money damages against the Town.  Huaman names the Town as a

Defendant in all § 1983 claims.  Accordingly, the Court will analyze Huaman's § 1983 claims

against the individual Defendants solely in terms of claims against those Defendants in their

individual, or personal, capacity and not as claims against the Town.

In an analysis under § 1983, the first step is identification of the specific constitutional

right allegedly violated. *See Graham v. Connor*, 490 U.S. 386, 393 (1989).  "[T]he Fourth

Amendment provides the source of for a § 1983 claim premised on a person's arrest." *Singer v.*

---

[5] These Counts simply allege that the Defendants "acted under color of law of the Constitution and Statutes of the
United States and State of Connecticut, the laws, charter, ordinances, policies, rules, regulations, customs and usages
of the State of Connecticut and Town of East Hartford." (Doc. # 1, at 11, ¶ 86).

*Fulton County Sheriff*, 63 F.3d 110, 115 (2d. Cir. 1995).  Claims of malicious prosecution or false arrest brought pursuant to § 1983 derive from violations of the Fourth Amendment right to be free from unreasonable seizure of the person.  *Singer*, 63 F.3d at 115-116.  Given that Huaman's § 1983 claims rely on the force used against J.M., his arrest, and his detention in Tinsley's police car, analysis under the Fourth Amendment controls.

Huaman's complaint  also alleges that the actions of the Defendants "violate[d] the Equal Protection and Procedural and Substantive Due Process clauses of the Fourteenth Amendment." (Doc. # 1, at 16, ¶ 113).  As noted above, Huaman's § 1983  claims are properly analyzed under the Fourth Amendment, not the Due Process or Equal Protection clauses. Additionally, while the Defendants addressed the Due Process claims in their summary judgment motion, Huaman did not address them in her objection to the motion. Therefore, those claims are considered abandoned. *See Jackson v. Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned").  For these reasons the Court will not apply a Due Process or Equal Protection analysis in considering Huaman's § 1983  claims.  The § 1983 claims therefore arise from alleged violations of the Fourth Amendment rights to be free from unreasonable seizures of the person and arrest without probable cause.

### 1.  Excessive Force (Count One)

Huaman alleges that "the defendant Tinsley employed unreasonable force," and that "[t]he Defendants should have known that emotional distress and physical injury was the likely result of their actions."  (Doc. # 1, at 11, ¶¶82-83).  The Defendants move for summary judgment on the § 1983 claims based on excessive force against Sullivan, Syme, and Sirois.  Specifically,

the Defendants argue that "based on the undisputed facts, Officer Sullivan, Sergeant Syme and Chief Sirois neither participated in nor witnessed any use of force against J.M." (Doc. # 74-1, at 12).  The Defendants do not move for summary judgment on the § 1983 claim against Tinsley based on the use of excessive force.

A plaintiff can only recover damages against a particular defendant under § 1983 when that defendant is personally involved in the alleged deprivation of a constitutional right.  S*ee* *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damage under § 1983.").  "A police officer is personally involved in the use of excessive force if he either:  (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003).

In the Court's view, Sullivan, Syme, and Sirois cannot be held liable for excessive force with regard to the altercation between Tinsley and J.M. because they were not personally involved in the use of any force.  Sullivan only arrived at Huaman's apartment after Tinsley's alleged use of excessive force inside the apartment. At the time Sullivan arrived, Tinsley and J.M. were outside and J.M. was in handcuffs.  Syme arrived after Sullivan, when J.M. was sitting in the back of Tinsley's police car.  Sirois was never present at Huaman's apartment, and he had no interaction with J.M.  The undisputed facts indicate that no Defendant besides Tinsley used any force against J.M. or was present during the altercation between Tinsley and J.M. With respect to the excessive force claims against Sullivan, Syme, and Sirois, the Defendants' motion for partial summary judgment is granted.

2.  False Arrest (Counts Two and Four)

Huaman alleges that "[t]he acts and conduct of the individual defendants and of the police department of the Town of East Hartford constitute false arrest, false imprisonment, for which the defendants are liable to the plaintiff." (Doc. # 1, at 12, ¶ 90).  Specifically, Huaman maintains that "[t]he defendants arrested the plaintiff and restrained plaintiff's physical liberty against his will in an unlawful manner."  (*Id.* at 12, ¶ 91).  Huaman's complaint contains two separate counts for the alleged false arrest and imprisonment of J.M., one pursuant to § 1983 (Count Two) and one pursuant to the tenets of common law (Count Four).  The Defendants move for summary judgment on all of Huaman's false arrest claims.

When analyzing claims for false arrest brought pursuant to § 1983, the Second Circuit applies the laws of the state in which the arrest occurred.  *See Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) ("Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law.") Since Connecticut law governs both Huaman's § 1983 false arrest claim (Count Two) and her common law false arrest claim (Count Four), the Court will analyze both false arrest claims together.

False arrest or imprisonment is the unlawful restraint of the physical liberty of another person.  *Green v. Donroe*, 186 Conn. 265, 267 (1982).  "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly."  *Berry v. Loiseau,* 223 Conn. 786, 820 (1992) (internal quotation marks omitted).  The act or acts constituting the false arrest must have been done for the purpose

of confining the plaintiff, or with the knowledge that plaintiff would be confined as a result of the act or acts. *Green*, 186 Conn. at 268.

a.   Defendants Sullivan, Syme, and Sirois

As previously noted, a defendant may only be held liable under § 1983 when that defendant is personally involved in the alleged deprivation of a constitutional right. *See Farrellv. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Personal participation, or the direct participation in the violation of a constitutional right, constitutes the most obvious basis for liability for under § 1983. Liability for personal, or direct, participation requires intentional participation in a constitutional violation with knowledge of the facts that made the conduct illegal. *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

A supervisor may be "personally involved" in the violation of a constitutional right by his supervisees if: "(1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event." *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998). "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). The doctrine of respondeat superior does not apply in §1983 claims. *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

As a non-supervisor, Sullivan's potential liability for false arrest depends solely on his personal participation in the arrest of J.M. The undisputed facts demonstrate that Sullivan did not arrive at Huaman's apartment until after Tinsley had arrested J.M. Huaman has not

presented any evidence showing that Sullivan played a role in arresting or charging J.M.  No reasonable jury could find that Sullivan intentionally participated in the arrest of J.M. with knowledge that J.M.'s constitutional rights had been deprived.

Syme did not arrive at Huaman's apartment until after Tinsley arrested J.M., with J.M. already sitting in the back of Tinsley's police car.  According to the undisputed facts, Tinsley told Syme about the altercation with J.M.  Huaman presents no other evidence of the specifics of that conversation.  Tinsley issued the Summons, not Syme.  There is no evidence before the Court indicating that Syme told Tinsley to charge J.M.  On the basis of one brief conversation between Syme and Tinsley, a reasonable jury could not conclude that Syme intentionally participated in the arrest of J.M. with the knowledge that J.M.'s Fourth Amendment rights had been violated.

Huaman alternatively seeks to hold Syme liable in his supervisory capacity as a Sergeant. No evidence indicates that Syme knew about a constitutional tort committed by Tinsley or was grossly negligent in his supervision of Tinsley.  As someone who did not see the altercation, it was reasonable for Syme to decide not to release J.M. from custody after hearing Tinsley's account.  The factual disputes, even when viewed in the light most favorable to Huaman, would not allow a reasonable jury to find Syme liable for false arrest.

Sirois was never present at Huaman's apartment on the day of J.M.'s arrest.  Huaman nonetheless seeks to hold Sirois liable as Chief of Police, a supervisor operating on the policymaking level.  There is no evidence in the record to suggest gross negligence on the part of Sirois.  The ultimate decision of Sirois to discipline Tinsley for failing to follow the protocol on how to handle juveniles does not demonstrate gross negligence in supervision or deliberate

indifference to constitutional torts. There is likewise no evidence in the record that would permit

a reasonable juror to conclude that Sirois "created a policy or custom under which

unconstitutional practices occurred or allowed such policy or custom to continue." *Spencer*, 139

F.3d at 112.

For the reasons stated above, the Court grants the Defendants' motion for partial

summary judgment as to the false arrest claims against Sullivan, Syme, and Sirois.

### b.  Defendant Tinsley

Tinsley restrained J.M.'s physical liberty when he arrested J.M., put J.M. in handcuffs,

and put J.M. into the back of his police car.  The Defendants base their motion for summary

judgment as to Huaman's false arrest claims against Tinsley (Counts Two and Four) on the

argument that no reasonable jury could find an absence of probable cause to arrest J.M. for

interfering with an officer.

 "It is well-established that probable cause is a complete defense to claims of false

imprisonment and false arrest." *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007).

"[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when

police officers have knowledge or reasonably trustworthy information of facts and circumstances

that are sufficient to warrant a person of reasonable caution in the belief that the person to be

arrested has committed or is committing a crime."  *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir.

2007) (internal quotation marks omitted).  Probable cause analysis requires examination of the

facts available to the officer at the time of, and immediately before, the arrest.  *Caldarola v.

Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002).  This examination occurs in light of the "'totality

of the circumstances.'"  *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)).  "[P]robable

cause is a fluid concept - - turning on the assessment of probabilities in particular factual

contexts - - not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. "In assessing probabilities, a judicial officer must look to 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Walcyzk*, 496 F.3d at 156 (quoting *Gates*, 462 U.S at 231).

The Defendants argue that probable cause existed to arrest J.M. for interfering with an officer in violation of Conn. Gen. Stat. § 53a-167a. Under § 53a-167a, "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Specifically, the Defendants contend that J.M.'s acts of dragging his feet on the way to the apartment door and placing his hands on the doorframe constituted acts of resistance, and therefore gave Tinsley probable cause to arrest J.M.

Huaman responds that, first,Tinsley did not act within the performance of his duties when he used force on J.M., giving J.M. the right to resist Tinsley. Second, Huaman argues that genuine factual disputes remain that could allow a reasonable jury to find that probable cause did not exist. The issue of the existence of probable cause to arrest J.M. for interfering with an officer depends on two issues: (1) whether Tinsley was acting within the performance of his duties when he used force against J.M., and (2) whether a reasonable officer could have concluded that probable cause existed to arrest J.M. for interfering with an officer.

Conn. Gen. Stat. § 53a-22(b) provides that a police officer "is justified in using physical force upon another person when and to the extent that he or she reasonably believes such to be necessary to: (1) Effect an arrest or prevent the escape from custody of a person whom he or she reasonably believes to have committed an offense, unless he or she knows that the arrest or custody is unauthorized; or (2) defend himself or herself or a third person from the use or

18

imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape." "If the police officer does not reasonably believe that his use of physical force is necessary [pursuant to Conn. Gen. Stat. § 53a-22(b)], then his use of force is not within the performance of his duties and a citizen may properly resist that use of force." *State v. Davis*, 261 Conn. 553, 570-71 (2002).

Although the Connecticut Supreme Court in *Davis* analyzed the scope of an officer's duties within the context of a criminal case involving a charge of interfering with an officer, the Court sees no reason why the same analysis should not apply in a civil case against a police officer defendant. "[W]hether a police officer reasonably believed that the use of physical force was necessary to effect one of the purposes enumerated in § 53a–22(b) and, therefore, was within the performance of his duties, is ultimately a factual question to be determined by the jury, taking into account all of the circumstances of the case, including the police officer's need to make rapid decisions, to maintain his authority and control, and to preserve both his own and the general public's safety. If the police officer did not have such a reasonable belief, his use of physical force cannot be said to have been within the performance of his duties." *Davis*, 261 Conn. at 572.

"Where parties dispute *what facts were known* to police officers at the time an individual was arrested, resolution is for the jury; where . . . the parties do not dispute what facts were known to Defendants but dispute whether those facts support probable cause, the disposition is a matter of law." *Moreno v. City of New Haven Department of Police Service*, 604 F. Supp. 2d 364, 372 (D. Conn. 2009) (emphasis in original). There is a genuine dispute as to what facts were known to Tinsley at the time he arrested J.M. The Court concludes that the issue of whether

Tinsley was acting within the performance of his duties when he began to use force on J.M. is best left to the jury.

The Court also concludes that genuine factual disputes remain as to whether a reasonable officer could have concluded that probable cause existed to arrest J.M. for interfering with an officer. The parties dispute how the altercation between Tinsley and J.M. unfolded. Huaman alleges that Tinsley roughly yanked J.M. off the couch, which necessarily occurred before J.M. dragged his feet. According to Huaman, Tinsley then placed J.M. into a headlock, and punched J.M. in the heaad and body, prior to reaching the apartment door. The Defendants contend that Tinsley only struck J.M. after J.M. had dragged his feet and placed his hands on the doorframe. Tinsley's conduct that triggered resistance by J.M. must receive consideration as part of the "totality of the circumstances." These disputes are material to a determination of whether a reasonable officer could have believed he had probable cause to arrest J.M. for interfering with an officer. Construing the evidence in the light most favorable to Huaman, the Court is unwilling to find as a matter of law that a reasonable officer would have believed that, after placing a twelve-year old child into a headlock and repeatedly punching that child, the child placing his hands on a doorframe constituted probable cause to arrest for interfering with an officer. For these reasons the Court declines to grant summary judgment on the Defendants' false arrest claims against Tinsley.

### 3. § 1983 Qualified Immunity

In light of the Court's discussion above, the remaining claim for a qualified immunity analysis under §1983 is the false arrest claim against Tinsley (Count Two). Huaman's other remaining claims, made pursuant to the tenets of common law, require analysis of a different immunity standard. "The standard of qualified immunity that protects public officials from civil

suits pursuant to §1983, arising from the performance of their discretionary functions, is distinct

from that established under [Connecticut] common law." *Mulligan v. Rioux*, 229 Conn. 716, 728

(1994).  Though the elements of a false arrest claim under § 1983 and at Connecticut common

law are the same, different immunity standards govern the claim under federal law (Count Two)

and the claim under state law (Count Four).

With regard to claims brought pursuant to § 1983, "government officials performing

discretionary functions, generally are shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The

right to remain free from arrest unless the arresting officer has probable cause is clearly

established. *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997). The Court has already

determined that material facts in dispute preclude a finding at the summary judgment stage that

probable cause existed for the arrest of J.M. by Tinsley.

However, the protections of qualified immunity extend beyond the existence of probable

cause in fact.  "Even if probable cause to arrest is ultimately found not to have existed, an

arresting officer will still be entitled to qualified immunity from a suit for damages if he can

establish that there was 'arguable probable cause' to arrest. Arguable probable cause exists if

either (a) it was objectively reasonable for the officer to believe that probable cause existed, or

(b) officers of reasonable competence could disagree on whether the probable cause test was

met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).

"Though immunity ordinarily should be decided by the court, that is true only in those

cases where the facts concerning the availability of the defense are undisputed; otherwise, jury

consideration is normally required." *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (internal

quotation marks and citation omitted).  If the disputed facts, when taken in the light most favorable to the non-moving party, could allow reasonable jurors to disagree over whether an officer acted in an objectively reasonable manner, then the qualified immunity issue cannot be resolved at the summary judgment stage. Facts are material to the qualified immunity analysis if, in the light most favorable to the non-moving party, those facts can support a reasonable interpretation that the officer acted in an objectively unreasonable manner by violating a clearly established constitutional right.

Huaman maintains that Tinsley violently pulled J.M. off the couch, placed J.M. into a headlock, and punched J.M. in the head prior to reaching the apartment door. Tinsley's disputed conduct happened before any of the acts of resistance that the Defendants argue establish the existence of probable cause. A jury is entitled to view J.M.'s resistance within the context of Tinsley's actions when the underlying charge for the alleged false arrest was interfering with an officer. When the disputed facts are viewed in the light most favorable to Huaman, a reasonable jury could find that reasonably competent officers would conclude that probable cause did not exist to arrest J.M.  Accordingly, the Court denies the Defendants' motion for summary judgment with respect to the false arrest claim against Tinsley pursuant to § 1983 (Count Two).

4.  *Monell* Municipal Liability (Count Three)

Huaman asserts a § 1983 claim against the Town pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which recognized a § 1983 cause of action against municipalities.   Huaman bases her *Monell* claim "on the Town's failure to conduct adequate investigations of excessive force complaints, and failure to discipline officers who may be found to use excessive force."  (Doc. # 77, at 11).

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove:  (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91).  "The fifth element - - the 'official policy' element - - - can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'" *Id.* (quoting *Monell*, 436 U.S. at 691). In a case involving a claim that a municipal policy or custom caused a constitutional injury, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees.*" Board of the County Commissioners v. Brown*, 520 U.S. 397, 405. (1997).

"A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).  The plaintiff must demonstrate that the need for more or better supervision to prevent constitutional violations was obvious in order to establish that a municipality was deliberately indifferent. *Id.*  "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id*.

Huaman relies on two spreadsheet documents as evidence of the Town's policy of inadequately investigating excessive force complaints and failing to discipline officers accused of using excessive force. One of these documents, referred to in the Plaintiff's Local Rule 56(a)2

Statement as "Internal Affairs Log 2000-2010,"  was filed as Exhibit 15 to that Statement.  (Doc. #77-1, at 25, ¶ 57; Doc. # 78-15).  The second document, referred to in the Plaintiff's Local Rule 56(a)2 Statement as "IA Log Spreadsheet 2011-2012," was filed as Exhibit 8 to that Statement. (Doc. #77-1, at 25, ¶ 59; Doc. #78-8). According to Huaman, Exhibit 15 shows thirty-two excessive force investigations conducted by the EHPD dating back to 2000, and Exhibit 8 shows five excessive force investigations in 2011 and 2012, including the one against Tinsley. There is nothing in the record authenticating these documents or explaining how or when they came into Huaman's possession.

The Defendants argue that these documents cannot be considered by the Court in connection with the motion for summary judgment because they are inadmissible hearsay.[6] Specifically, the Defendants argue that "Plaintiff has made no showing that Exhibit 15 is a business record or even satisfies one of five requirements to be admitted as such.  Further, plaintiff has not demonstrated that this document could constitute other admissible evidence or be admitted under any other proper hearsay exception."  (Doc. # 83, at 11).

The Court agrees with the Defendants in this regard. The Local Rules governing motions for summary judgment provide that "[e]ach statement of material fact by . . . an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." L. Civ. R. 56(a)3. "[D]ocumentary exhibits that have not had a proper foundation laid to authenticate them will not suffice and may not be considered" for purposes of a summary judgment motion. *Vermont v. Densmore Brick Co.*, Civil Action File No. 78-297, 1980 U.S. Dist. LEXIS 11581, at *6 (D. Vt. April 10, 1980) (citing *Hamilton v. Keystone Tankship Corp.*, 539 F.2d 684 (9th Cir. 1976)); *see*

---

[6] Although the Defendants make this argument specifically as to Exhibit 15, the same rationale applies to Exhibit 8.

*also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

"[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Ockimey v. Town of Hempstead*, 425 F. App'x 45 (2d Cir. 2011) (internal quotation marks omitted). Because Huaman's *Monell* claim relies on evidence that may not be considered by the Court, her *Monell* claim against the Town fails.

Even if the two exhibits relied upon by Huaman were admissible and taken into consideration by the Court, those documents lack the specificity and detail required to support a finding by a reasonable jury that the Town exhibited deliberate indifference to civilian complaints of excessive force. Each spreadsheet contains twenty columns designated only by letter. (Doc. # 78-8; Doc. # 78-15). None of the twenty columns has a label or heading. While the first name entered presumably references the officer complained about, Huaman provides no explanation for the name in the next column. Five columns contain dates, with no explanation of their significance. Huaman has not identified the context or reasoning behind any of the names, codes, letters, or periods of time in the remaining columns. These exhibits are too vague and ambiguous to support a finding of deliberate indifference by a reasonable jury.

Huaman contends that she "can establish at least thirty-two complaints of excessive force" over a period of twelve years and that "in none of these cases was an officer ever found culpable and disciplined." (Doc. # 77, at 11). Huaman cites *Merman v. City of Camden*, 824 F. Supp. 2d 581 (D.N.J. 2010) as legal support for the proposition that a municipality's history of receiving excessive force complaints can establish deliberate indifference when none of those complaints resulted in discipline for the officers. In *Camden*, however, the police department,

which employed about 400 police officers, received four hundred and seventy complaints of excessive force during a six year period. *Camden*, 824 F. Supp. 2d at 590.  Huaman contends that the EHPD, which employs over 100 police officers, received thirty-two excessive force complaints in a twelve year period. The sheer number of excessive force complaints in *Camden* dwarfs the number of excessive force complaints made against EHPD officers.

Huaman also relies upon *Galindez v. Miller*, 285 F. Supp. 2d 190 (D. Conn. 2003) , which involved a deliberate indifference claim against the City of Hartford based on the alleged repeated failure of the City to discipline officers accused of using excessive force.  Again, the plaintiff in *Galindez* produced considerably more evidence than Huaman, including a greater number of excessive force complaints and specific examples of incomplete or otherwise deficient investigations of officers.  Even if accurate, the fact that thirty-two excessive force complaints were lodged with the EHPD over a twelve year period and that none of those complaints resulted in disciplinary action cannot, alone, support a finding that the Town  was deliberately indifferent to violations of constitutional rights.

Huaman also argues that the fact "[t]hat the Town conducted no investigation into the allegations against Syme and Sullivan is further proof of a policy of deliberate indifference." (Doc. # 77, at 12-13).  However, Huaman's *Monell* claim is based upon the Town's allegedly inadequate investigation of complaints of excessive force and alleged failure to discipline officers accused of using excessive force. It is an undisputed fact that neither Sullivan nor Syme used any force on J.M.  No evidence indicates that Huaman or anyone in her family complained to the Town or EHPD about Sullivan or Syme using excessive force.  A decision not to conduct investigations into Sullivan or Syme does not help establish a policy of deliberate indifference to officers' use of excessive force.

Huaman also claims that the Town's investigations into excessive force complaints were inadequate because "the Town always credited the accounts of officers over civilians, even when eyewitnesses supported the civilian's version of events, and even when the officers' accounts were facially implausible." (Doc. # 77, at 12). Huaman presents no evidence for this assertion other than the fact that the Defendants' Local Rule 56(a)1 Statement cites to interview statements made by Sullivan and Syme. As Huaman sued four individual police Defendants, much of the record evidence comes from statements by police officers. Moreover, the Defendants support their own assertion, namely that the EHPD did consider civilian accounts, with evidence from the deposition of EHPD Lieutenant Rosa.

Huaman has not produced evidence that could allow a reasonable jury to find that the Town exhibited deliberate indifference to constitutional violations, that the need for more protection against violations was obvious, or that any alleged policy caused Tinsley's alleged constitutional tort. As a result, the Defendants' motion for partial summary judgment with regard to the § 1983 *Monell* claim against the Town is granted.

## B.  STATE LAW CLAIMS

### 1.  The Connecticut Constitution, Article First, §§ 7 and 9 (Counts Two and Three)

Huaman alleges that "[t]he acts of all of the defendants are in violation of . . . Article First, §§ 7 and 9 of the Connecticut Constitution." (Doc. # 1, at 12, ¶ 94). The Court construes this allegation, which is included in Count Two (§ 1983 false arrest), as an allegation against the individual Defendants. Within the array of alleged violations contained in Count Three, Huaman likewise alleges that "[t]he acts of all of the defendants are in violation of . . . Article First, § § 7 and 9 of the Connecticut Constitution." (Doc. # 1, at 16, ¶ 113). Given that Count Three

27

pertains to the Town's *Monell* liability, the Court construes this allegation as one against the Town.

The Connecticut constitution, article first, § 7 guarantees that, "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures . . . ."  Section 7 serves as the state constitutional protection against unreasonable searches and seizures; excessive use of force by police falls within the protection against unreasonable seizures.  *See Carey v. Maloney*, 480 F. Supp. 2d 548, 561 (D. Conn. 2007) ("Section Seven of the Connecticut Constitution protects against unreasonable searches and seizures. It appears that, like the Fourth Amendment of the United States Constitution, it protects against unreasonable use of force in effecting arrests.").  The Connecticut constitution, article first, § 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."  Section 9 serves as the constitutional protection against false arrests.  Together, article first, § § 7 and 9 of the Connecticut constitution provide citizens with the right to remain free from unreasonable seizures, including those involving excessive force, and unlawful arrests.

In *Binette v. Sabo*, 244 Conn. 23 (1998),  the Connecticut Supreme Court affirmed the existence of a *Bivens*-type action for money damages for individuals alleging violations of their rights under article first, §§ 7 and 9 of the Connecticut constitution.  In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court established a cause of action for individuals who allege that federal officials violated their Fourth Amendment rights.  The Connecticut Supreme Court specifically established a state *Bivens*-like action against police officers who allegedly violate article first, §§ 7 and 9 of the Connecticut constitution, explaining that "the compelling policy considerations favoring the creation of a constitutional tort in *Bivens* apply with equal force to this case." *Binette*, 244 Conn. at 45.

28

"Furthermore, we agree with the fundamental principle underlying the United States Supreme Court's decision in *Bivens,* namely, that a police officer acting unlawfully in the name of the state 'possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own.'" *Id.* at 43 (quoting *Bivens,* 403 U.S. at 392).

*Bivens* claims against federal actors require the plaintiff to prove that each defendant personally violated his or her constitutional rights, much in the same manner as required in §1983 causes of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) ("Because the doctrine of *respondeat superior* does not apply in *Bivens* actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation.").  Since the Connecticut Supreme Court heavily relied on *Bivens* in establishing actions for money damages for violations of article first, §§ 7 and 9 of the Connecticut constitution, the Court concludes that a plaintiff pursuing such an action  must prove each defendant's personal involvement in the constitutional violation.

The Defendants argue that, with regard to any and all claims under the Connecticut constitution against Sullivan, Syme, and Sirois, "none of these defendants had any personal involvement in the use of any force against J.M.  Thus, plaintiff's state constitution claims against them on this score must fail."  (Doc. # 74-1, at 25).  Huaman responds by asserting, "As is clear from the PSOF [Plaintiff's Statement Of Facts] the defendants were all personally involved in the depr[i]vation of plaintiff's rights.  This began with the excessive force by Tinsley that was condoned and covered up by Sullivan, Syme and then Sirois."  (Doc. # 77, at 8).  The

29

Court has already addressed the issue of the personal involvement of Sullivan, Syme, and Sirois with respect to Huaman's § 1983 claims for unreasonable force and false arrest and sees no reason why the legal determination of those Defendants' personal involvement should differ with regard to claims under the Connecticut constitution.  Accordingly, with regard to the claims against Sullivan, Syme, and Sirois under the Connecticut constitution, the Court grants the Defendants' motion for partial summary judgment.

With regard to Huaman's state constitutional claims against Tinsley, the Defendants assert that "any Connecticut State Constitution claim against Officer Tinsley arising from J.M.'s alleged false arrest also fails, and he is entitled to summary judgment as to these claims as well." (Doc. # 74-1, at 26).  The Defendants do not support this conclusory statement with any additional legal support.  The Court declined to grant summary judgment on the false arrest claim against Tinsley[7] and likewise denies the Defendants' motion for partial summary judgment with regard to the claims against Tinsley under the Connecticut constitution.

The Defendants moved for summary judgment on all claims against the Town other than the one derived from Tinsley's negligent infliction of emotional distress claim.  Huaman has not directed the Court to any legal authority indicating lesser requirements for municipal liability under the Connecticut constitution than the requirements for liability that apply under § 1983.  The Court observes that respondeat superior does not attach liability to the Town based solely on alleged constitutional violations by Town employees.  The Court addressed the Town's § 1983 liability in the context of Huaman's *Monell* claim and Huaman has not presented any additional evidence regarding the Town having a policy or custom that violates the Connecticut

---

[7] As previously noted, the Defendants did not seek summary judgment as to the § 1983 excessive force claim against Tinsley.

constitution.  Accordingly, the Court grants the Defendants' motion for partial summary

judgment with respect to the claims against the Town under the Connecticut constitution.

2.  Negligent Infliction of Emotional Distress (Count Five)

Huaman alleges that the Defendants' conduct caused J.M. severe emotional distress, and

that all the Defendants are liable at common law for negligent infliction of emotional distress.

The Defendants have moved for summary judgment on the negligent infliction of emotional

distress claims against Sullivan, Syme, and Sirois.  They have not moved for summary judgment

on the negligent infliction of emotional distress claim made against Tinsley.

There are four required elements of a cause of action for negligent infliction of emotional

distress:  "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff

emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was

severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was

the cause of the plaintiff's distress."  *Carrol v. Allstate Insurance Co.*, 262 Conn. 433, 444

(2003).  "[I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff

must prove that the defendant should have realized that its conduct involved an unreasonable risk

of causing emotional distress and that that distress, if it were caused, might result in illness or

bodily harm."  *Id.* at 446 (internal quotation marks omitted).

The Defendants argue that because the record shows that Sullivan and Syme only arrived

at Huaman's apartment after the altercation between Tinsley and J.M., "the only conduct by

these defendants which could even conceivably underlie plaintiff's instant claim is the alleged

comments made to J.M. following his arrest."  (Doc. # 74-1, at 30).  The Defendants further

contend that the "[p]laintiff improperly seeks to attribute the conduct of Officer Tinsley in

31

plaintiff's apartment to defendants Sullivan, Syme and Sirois to support her emotional distress claims against these defendants."  (Doc. # 83, at 15).

Huaman responds that "the comments made by defendants are not the 'only conduct' underlying this claim. . . . The collaboration by all the defendants in allowing a 12 year old disabled child to be held in handcuffs locked in the rear of a police cruiser and then mocked is only made worse by the manner in which JM arrived there:  beaten up by another officer and falsely charged with Assault on a Police Officer and Interfering with a Police Officer."  (Doc. # 77, at 17-18).  Huaman further argues that the Defendants had an obligation to release J.M. after Tinsley gave the Summons to Huaman, and that their failure to do so created an unreasonable risk of causing J.M. emotional distress.

The Court finds no legal support for Huaman's contention that Sullivan and Syme had an obligation to release J.M. immediately after Huaman received a Summons.  Huaman has not cited any case or statute indicating that the police officers had such an obligation.  Sullivan and Syme did not interact with J.M. before he left the apartment and there is no evidence which would permit a reasonable jury to find a 'collaboration by all the defendants' as to the arrest of J.M. The Court therefore agrees with the Defendants that the comments allegedly made to J.M. constitute the only conduct underlying Huaman's negligent infliction of emotional distress claims against Sullivan and Syme.

The Defendants contend that none of Sullivan or Syme's alleged comments support a negligent infliction of emotional distress claim, arguing specifically that "the comments of which plaintiff complains would not create an unreasonable risk of causing J.M. emotional distress." (Doc.  74-1, at 30).  Additionally, the Defendants argue that any emotional distress suffered by J.M. was not foreseeable to Sullivan or Syme. Finally, the Defendants contend that the "plaintiff

cannot prove that any alleged emotional distress from which J.M. suffers was caused by these defendants." (*Id.*).

The Court agrees that the comments allegedly made by Sullivan and Syme outside Huaman's apartment are insufficient to establish a claim of negligent infliction of emotional distress against them. The alleged statement to J.M. that "[y]ou're a punk and you should be in school" does not create an unreasonable risk of causing J.M. emotional distress. (Doc. # 78-3, at 42, p. 87:8). Broad, unspecific allegations that Sullivan was "bad-mouthing" J.M. would not permit a reasonable jury to find that Sullivan or Syme created an unreasonable risk of emotional distress.

According to J.M., while he was sitting in the back of Tinsley's vehicle one of the police officers said something to the effect that Tinsley "was a Mixed Martial Arts guy and that he was a fighter." (Doc. # 78-3, at 43, p. 88:10-11). There is nothing in the record that attributes this comment to any specific defendant. Additionally, the Court does not find that such a remark, made after the altercation with Tinsley had ended, would create an unreasonable risk of causing J.M. emotional distress

Furthermore, Huaman has not provided any evidence to show that J.M.'s distress was foreseeable from the perspective of Sullivan or Syme. Though rude and improper, calling a twelve year old child a "punk" would not normally lead to emotional distress. The unique circumstances that may have contributed to J.M.'s emotional distress would not have been apparent to Sullivan or Syme. Therefore J.M.'s emotional distress was not a foreseeable consequence of Sullivan or Syme's alleged comments.

Most importantly, Huaman fails to cite any evidence that could reasonably demonstrate that Sullivan or Syme caused J.M.'s emotional distress. The confrontation between Tinsley and

J.M. and the subsequent arrest of J.M. by Tinsley dominate the facts underlying Huaman's allegations, but Tinsley's conduct cannot be attributed to Sullivan or Syme by association. Neither Sullivan nor Syme participated in the altercation inside the apartment or in the arrest of J.M.  No reasonable jury could find that Sullivan's alleged statement about J.M. being a punk caused J.M.'s emotional distress rather than Tinsley's alleged conduct inside Huaman's apartment.  For these reasons  the Court grants the Defendants' motion for partial summary judgment with respect to the negligent infliction of emotional distress claims made against Sullivan and Syme.

With respect to Sirois, Huaman has not presented any evidence demonstrating that Sirois interacted with J.M.  No reasonable jury could find that Sirois, by virtue of his role in investigating complaints made about police conduct, somehow caused J.M.'s emotional distress when he never interacted with J.M.  The Defendants' motion for partial summary judgment with respect to the negligent infliction of emotional distress claim against Sirois is also granted.

### 3.  Intentional Infliction of Emotional Distress (Count Six)

The Defendants have moved for summary judgment on the intentional infliction of emotional distress claims against Sullivan, Syme, and Sirois.  They have not moved for summary judgment on the intentional infliction of emotional distress claim against Tinsley.

"For the plaintiff to prevail on a claim of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . ."  *Dollard v. Board of Education*, 63 Conn. App. 550, 553-54 (2001) (internal

quotation marks omitted).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Appleton v. Board of Education*, 254 Conn. 205, 211 (2000) (internal quotation marks omitted).

Huaman bases her intentional infliction of emotional distress claims against Sullivan, Syme, and Sirois on the same facts and allegations as her negligent infliction of emotional distress claims.  The Court found that the record evidence cannot support Huaman's claims for negligent infliction of emotional distress.  The Court likewise finds that the record evidence cannot support Huaman's intentional infliction of emotional distress claims. For that reason, the Court grants the Defendants' motion for partial summary judgment with regard to the intentional infliction of emotional distress claims against Sullivan, Syme, and Sirois.

### 4.  Malicious Prosecution (Count Seven)

 Huaman claims that all of the Defendants maliciously prosecuted J.M. and that she is entitled to punitive damages due to the Defendants' willful and egregious conduct. The Defendants addressed Huaman's malicious prosecution claim in terms of a constitutional claim brought pursuant to § 1983.   It is not entirely clear from her Complaint whether Huaman's claim for malicious prosecution is brought pursuant to § 1983 or the common law.  Since a malicious prosecution claim brought pursuant to § 1983 "is governed by state law," however, any discrepancies between the complaint and the Defendants' summary judgment motion do not affect the Court's analysis.  *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995).

In her complaint, Huaman alleges that all the Defendants "maintained the . . . charges against [J.M.] and forced him to undergo numerous court appearances, humiliation and [the] indignity of being falsely accused and prosecuted for charges defendants all knew were false."

(Doc. # 1, at 18, ¶ 86).  Specifically, Huaman claims that the "Defendants Sirois, Tinsley, Syme, Sullivan and Town of East Hartford, maintained the prosecution to cover up their misconduct and the liability of the defendant Town of East Hartford." (*Id*. at 18, ¶ 87).  The Defendants base their motion for partial summary judgment as to the malicious prosecution claims against all Defendants upon the existence of probable cause to arrest J.M.  As discussed above, the Court declines to grant summary judgment on this basis because factual disputes remain as to whether probable cause existed.  Additionally, as to the claims against Sullivan, Syme, and Sirois, the Defendants argue that Huaman cannot establish that any of those Defendants participated in J.M's prosecution.

"To prevail on a malicious prosecution claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding terminated in favor of the plaintiff; (3) 'the defendant acted without probable cause'; and (4) 'the defendant acted with malice.' *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (quoting *McHale v. W. B. S. Corp.*, 187 Conn. 444, 447 (1982)).

With regard to the first element, "A person is deemed to have initiated a proceeding if his direction or request, or pressure of any kind by him, was the determining factor in the officer's (or prosecutor's) decision to commence the prosecution." *Fatone v. DeDomenico*, 161 Conn. 576, 577 (1971).  An arresting officer necessarily initiates a criminal proceeding by virtue of making an arrest for criminal conduct.  An individual who provides assistance to an arresting officer does not automatically initiate a criminal proceeding against the arrestee.  Private individuals who provide incriminating information to an officer do not thereby initiate a criminal proceeding, so long as they do not know the information to be false. *Lefebvre v. Zarka*, 106

36

Conn. App. 30, 36 (2008).  By extension, an officer does not necessarily initiate a criminal proceeding by having discussions with the arresting officer.  An individual must exert some form of pressure or influence to initiate a criminal proceeding. *Id.*

The Defendants do not contest the second element required for a malicious prosecution claim, namely that the criminal proceedings against J.M. terminated in his favor.  Regarding the third element, the Court leaves determination of the existence of probable cause for the jury. To support a malicious prosecution claim, the Plaintiff must also show that the Defendant acted with malice.  "In a malicious prosecution action, the defendant is said to have acted with 'malice' if he [or she] acted primarily for an improper purpose; that is, for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based." *Mulligan v. Rioux*, 229 Conn. 716, 732 (1994) (internal quotation marks omitted).

### a.  Defendant Tinsley

Given the Court's conclusion that the issue of the existence of probable cause should be left for the jury, the Defendants lack support for their motion for partial summary judgment as to the malicious prosecution claim against Tinsley.   The undisputed facts indicate that Tinsley arrested J.M., thereby instituting criminal proceedings against J.M.  Genuine disputes remain as to Tinsley's conduct inside Huaman's apartment. Taking the factual disputes in the light most favorable to Huaman, a reasonable jury could find that Tinsley acted primarily for some purpose other than bringing an offender to justice.  The disputes as to whether Tinsley aggressively yanked J.M. off the couch, placed J.M. into a headlock, and punched J.M. on the way to the door materially affect the determination of malice.  Accordingly, the Court denies the Defendants' motion for partial summary judgment regarding the malicious prosecution charge against Tinsley.

b.   Defendants Sullivan, Syme, and Sirois

Huaman has not cited any evidence that could reasonably establish that Sullivan, Syme, or Sirois initiated the criminal proceedings against J.M.  Whereas Tinsley arrested J.M., none of the other police officer Defendants were present at Huaman's apartment when the arrest took place.  Sullivan and Syme could not have pressured Tinsley to commence criminal proceedings against J.M., because they arrived after Tinsley had already initiated criminal proceedings by arresting J.M.  Sullivan's conversations with J.M. did not influence Tinsley's decision to arrest J.M. or issue the Summons to Huaman.  Nothing in the record demonstrates any further involvement by Sullivan in the criminal proceedings against J.M.  The lone conversation between Syme and Tinsley cannot support a reasonable inference that Syme pressured Tinsley to arrest or initiate the prosecution of J.M.  Again, nothing in the record shows that Syme participated in the proceedings against J.M. after all parties left Huaman's apartment.  Accordingly, the Court grants the Defendants' motion for summary judgment on the malicious prosecution claims against Sullivan and Syme.

Huaman has not presented any evidence that Sirois played any role in the criminal proceedings against J.M.  The disputed facts contained in Huaman's Local Rule 56(a)2 Statement pertain only to Sirois' function as investigator into complaints made against Town police officers. Nothing in the record could reasonably support a charge that Sirois pressured, directed, or requested Tinsley or any other Town employee to arrest, charge, or prosecute J.M. The Court grants the Defendants' motion for summary judgment on the malicious prosecution claim against Sirois.

5.  Discretionary Immunity

In light of the Court's discussion above, the remaining claims for a common law immunity analysis are the false arrest (Count Four) and malicious prosecution (Count Seven) claims against Tinsley.  When a plaintiff brings an action containing claims under both § 1983 and Connecticut law, the Court must apply Connecticut common law standards in determining the immunity defense with regard to the common law claims.  *See Rioux*, 229 Conn. at 728 ("The standard of qualified immunity that protects public officials from civil suits pursuant to §1983 . . . is distinct from that established under our common law.").  "The [common-law] doctrines that determine the tort liability of municipal employees are well established . . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts . . . .  Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment." *Martel v. Metropolitan District Commission*, 275 Conn. 38, 48-49 (2005) (internal quotation marks omitted).

The Connecticut Supreme Court has identified three exceptions to a municipal employee's discretionary act immunity.  "First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure." *Doe v. Petersen*, 279 Conn. 607, 615 (2006).[8]  The Court has already declined to decide that Tinsley did not act with malice as a matter of law in connection with the malicious prosecution claim brought against him. Resolution of the disputed facts regarding Tinsley's alleged violent conduct toward J.M.

---

[8] Liability may also be imposed "when a statute provides for a cause of action against a . . . municipal official for failure to enforce certain laws" and "when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Petersen*, 279 Conn. at 615-16 (internal quotation marks omitted).

materially affects whether a reasonable jury could find that Tinsley acted maliciously. Accordingly, the exception for conduct involving malice also prevents the Court from granting summary judgment on the basis of discretionary act immunity on the common law claims against Tinsley.

### 6. Liability of the Town Pursuant to § 52-557n

Huaman seeks damages from the Town based on the common law claims against the individual Defendants.  Huaman contends that "[p]ursuant to Connecticut General Statutes § 52-557 the Defendant Town of East Hartford is liable for damages inflicted by the individual defendants pursuant to the common law claims."  (Doc. # 1, at 19, ¶ 2).

In Connecticut,  a municipality "shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."  Conn. Gen. Stat. § 52-557n (a).

Conn. Gen. Stat. § 52-557n bars claims against municipalities based on willful misconduct, and therefore plaintiffs cannot use § 52-557n to hold municipalities liable for the intentional misconduct of municipal employees. *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (a claim that the town was liable for the intentional infliction of emotional distress by a town official was precluded by § 52-557n because the terms "willful" and "intentional" are synonymous under Connecticut law). "Because the plaintiff's claim [is]

governed by the immunity provided in § 52-557n (a)(2), the defendant [is] immune from suit for the intentional torts of its employees, regardless of whether the acts were ministerial or discretionary . . . ." *O'Connor v. Board of Education*, 90 Conn. App. 59, 65 (2005).

The Defendants argue that Huaman cannot recover damages from the Town pursuant to §52-557n based on the common law claims of false arrest, intentional infliction of emotional distress, malicious prosecution, and assault and battery.  Specifically, the Defendants argue that "[b]ecause there is no basis in the law to hold the Town liable for the intentional torts comprising counts Four, Six, Seven and Eight, the Town is entitled to summary judgment in its favor as to each such claim."  (Doc. # 74-1, at 35).  Huaman presents no countervailing legal support.  The Court therefore grants summary judgment with respect to the common law claims of false arrest, intentional infliction of emotional distress, malicious prosecution, and assault and battery brought against the Town pursuant to § 52-557n.

The Defendants also argue that with regard to the negligent infliction of emotional distress claim (Count Five), the Town is not liable for damages based on the claims against Sullivan, Syme, and Sirois.  Importantly, the Defendants do not move for summary judgment on the negligent infliction of emotional distress claim against Tinsley; by extension, the Defendants do not move for summary judgment on the negligent infliction of emotional distress claim against the Town pursuant to § 52-557n, as derived from Tinsley's conduct.  Huaman does not address the Town's liability for negligent infliction of emotional distress beyond liability which is derived from the negligent infliction of emotional distress claims against the individuals.  The Court has granted the Defendants' motion for partial summary judgment with respect to the negligent infliction of emotional distress claims against Sullivan, Syme, and Sirois. The Court likewise grants the Defendants' motion as to Huaman's negligent infliction of emotional distress

41

claims against the Town to the extent that those claims are derivative of the claims against Sullivan, Syme, and Sirois.

### III.  CONCLUSION

For the foregoing reasons, the Defendants' motion for partial summary judgment (doc. # 74) is **GRANTED in part and DENIED in part.**

The Court **GRANTS** summary judgment in favor of Officer Sullivan, Sergeant Syme, and former Chief Sirois on all claims against them in the complaint.  **All claims against Sullivan, Syme, and Sirois are hereby DISMISSED.**

With regard to the remaining Defendants, the Court **GRANTS**  summary judgment in favor of the Town on (1) the *Monell* § 1983 claim; (2) all other § 1983 claims; (3) all claims against the Town under §§ 7 and 9 of the Connecticut Constitution; (4) all common law claims directly against the Town; (5) all claims for damages pursuant to § 52-557n based on any of the common law claims against Sullivan, Syme, and Sirois; (6) all claims for damages pursuant to §52-557n based on the common law claims for false arrest, malicious prosecution, intentional infliction of emotional distress, and assault and battery against Tinsley.

The Court **DENIES** summary judgment, and the requests for immunity, on all remaining claims.

This leaves the following claims for trial:  (1) the excessive force claim against Tinsley pursuant to § 1983; (2) the false arrest claim against Tinsley pursuant to § 1983; (3) the claim against Tinsley for violations of §§ 7 and 9 of the Connecticut Constitution; (4) the false arrest claim against Tinsley at common law; (5) the negligent infliction of emotional distress claim against Tinsley at common law; (6) the intentional infliction of emotional distress claim against

Tinsley at common law; (7) the malicious prosecution claim(s) against Tinsley[9]; (8) the assault and battery claim against Tinsley at common law; and (9) the negligent infliction of emotional distress claim against the Town, pursuant to §52-557n of the Connecticut General Statutes and based on the negligent infliction of emotional distress claim against Tinsley at common law.

SO ORDERED this     30th       day of September, 2015.

_____/s/ DJS_____

Dominic J. Squatrito

United States District Judge

---

[9] As was previously noted, it is not entirely clear whether Huaman is pursuing only a common law malicious prosecution claim, or claims pursuant to both the common law and § 1983.